UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE QUEZADA

                Plaintiff,

– against –

U.S. WINGS, INC.,

                Defendant.

**OPINION & ORDER**

20 Civ. 10707 (ER)

Ramos, D.J.:

     Jose Quezada, on behalf of himself and others similarly situated, brings this suit under the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL") alleging denial of full and equal access to a website owned by U.S. Wings, Inc.  Doc. 13.  Pending before the Court is U.S. Wing's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of supplemental jurisdiction under 28 U.S.C. § 1367, and lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Doc. 14.

     For the reasons set forth below, U.S. Wings' motion to dismiss for lack of personal jurisdiction is DENIED.

## I. BACKGROUND

### A. Factual Background

     The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  At all relevant times, Quezada, who is visually impaired and legally blind, requires screen-reading software to read and access information on the internet.  Doc. 13 ¶ 1.  Specifically, Quezada states:

> [B]lind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable

> Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, [and] goods . . . contained thereon.

*Id*. at ¶ 17.

Quezada alleges that screen-reading software, such as NonVisual Desktop Access ("NVDA"), with which he is proficient, is available for blind and visually impaired individuals with Windows operating system-enabled computers and devices. *Id.* ¶ 18. Quezada notes, however, that "for screen-reading software to function, the information on a website must be capable of being rendered into text." *Id.* ¶ 19.

On December 10, 2020, Quezada visited the defendant's website, www.uswings.com, to "purchase . . . jackets and leather vests" and to "understand the different descriptions for the products offered" by "listening to audio descriptions of the images of the products sold on the [w]ebsite." *Id.* ¶ 4. Quezada was not able to make a purchase because the website was not compliant with the current ADA accessibility standards. *Id.* ¶ 5.[1]

As concerns the ADA violation, Quezada "seeks to certify a nationwide class . . . [of] all legally blind individuals in the United States who have attempted to access [d]efendant's [w]ebsite and, as a result, have been denied access to the equal enjoyment of goods and services . . . ." *Id.* ¶ 47. As concerns the NYCRHL violation, Quezada "seeks certification of a New York City subclass . . . [of] all legally blind individuals in the City of New York who have attempted to access [d]efendant's [w]ebsite and, as a result, have been denied access to the equal enjoyment of goods and services offered . . . ." *Id.* ¶ 48.

---

[1] In detail, Quezada lists thirteen issues and barriers that he experienced or knows the website contains in the Amended Complaint. *See* Doc. 13 ¶ 33.

### B. Procedural History

Quezada filed the instant suit on December 18, 2020. Doc. 1. On March 25, 2021, Quezada filed an amended complaint. Doc. 13. On April 15, 2021, U.S. Wings moved to dismiss for lack of subject matter jurisdiction, lack of supplemental jurisdiction, and lack of personal jurisdiction. Doc. 14.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations. *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 470 (S.D.N.Y. 2005).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 5 Civ. 9915 (WHP),

2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted).

### B. Analysis

U.S. Wings argues that Quezada lacks standing for three reasons. First, U.S. Wings alleges that they have remediated all existing issues with their website and ensured that those problems do not persist in the future, which would make all of Quezada's claims moot. Doc. 17 at 11. Second, Quezada did not show that he "intended to return to the U.S. Wings website" at the time he filed the initial Complaint. *Id*. Third, Quezada did not allege an injury-in-fact. *Id.* at 12.

The following, three elements are required for a claimant to have standing under the ADA: (1) it needs to be "reasonable to infer from [the plaintiff's complaint] that the discriminatory treatment will continue," (2) it needs to be "reasonable to infer that [the plaintiff] 'intend[s] to return to [the public accommodation]'", and (3) the plaintiff "alleges past injury under the ADA." *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 WL 7480619, at *3 (S.D.N.Y. Dec. 18, 2020) (quoting *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 154–55 (2d Cir. 2013) (summary order) (alterations in *Greenwich Hosp. Grp., LLC*) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)).

Regarding the first requirement, to dismiss an ADA claim as moot, "a movant must demonstrate that '(1) there is no reasonable expectation that the alleged violation will recur *and* (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21, 2019) (quoting *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (emphasis in original) and *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014)). The defendant must demonstrate that it is "'absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.'" *Diaz v. Kroger Co.*, No. 18 Civ.

7953 (KPF), 2019 WL 2357531, at *2 (S.D.N.Y. June 4, 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

This district has allowed the filing of affidavits and similar documentation to show if a defendant has fixed accessibility issues on their website. *Angeles v. Grace Products, Inc.*, No. 20 Civ. 10167 (AJN), 2021 WL 4340427, *3 (S.D.N.Y. Sept. 23, 2021) (citing *Diaz*, 2019 WL 2357531, at *3)). Both parties have submitted materials to support their arguments on the current state of the website's accessibility. U.S. Wings stated that they bought a one-year partnership with accessiBe, a website technology vendor, to ensure their website remains compliant with the Website Content Accessibility Guidelines, known as the WCAG 2.1 Guidelines. Doc. 17 at 9 (citing Kruty Decl. ¶ 12, 14). Throughout early 2021, accessiBe provided U.S. Wings with three audit reports that concluded that the website was in compliance with WCAG 2.1. *Id.* (citing Kruty Decl. ¶¶ 17–19). The most recent audit report from accessiBe is dated April 2, 2021. *Id.* On the other hand, Quezada filed a declaration, from Robert D. Moody ("Moody Declaration"), the President, CEO, and principal investigator of information systems at Forensic Data Services, in which he found WAG 2.1 non-compliance. Doc. 19 at 21 (Moody Decl. ¶¶ 7–8). Mr. Moody frequently provides testimony in state and federal courts "as an expert in the fields of information systems auditing, information security and computer forensics." Moody Decl. ¶¶ 1–2. Moody evaluated the website on April 29, 2021 and found that accessibility issues persist for visually impaired people. *Id.* ¶ 7.

The Court agrees with Quezada that U.S. Wings fails to meet the necessary burden to demonstrate ADA mootness. In September 2021, a similar case involving ADA and NYCHRL violations was brought to this district. In *Angeles v. Grace Prod., Inc.*, the defendant's website was allegedly inaccessible for visually impaired customers. 2021 WL 4340427, at *1. The defendant submitted documentation to illustrate partnership with accessiBe, while the plaintiff filed an affidavit from Mr. Moody to support their claims. *Id.* at *3. The court denied the defendant's motion to dismiss

because the defendant "ha[d] not met its 'formidable' burden of demonstrating that it is 'absolutely clear' that the website has been brought into compliance and will remain as so." *Id.* (quoting *Diaz*, 2019 WL 2357531, at *2).

The Court concludes that U.S. Wings has not shown that they have undoubtedly fixed accessibility issues on their website as multiple barriers still allegedly exist.

Second, U.S. Wings argues that Quezada did not allege an intent to return to the website in their initial Complaint. Doc. 17 at 11. They also note that, though Quezada made this intent to return clear in the Amended Complaint, the ADA violations had been fixed by U.S Wings via accessiBe by that time. *Id.* at 18. In the Amended Complaint, Quezada alleges that he intends to "purchase leather jackets and military branded apparel in the future from the [w]ebsite" and "remains hopeful that the accessibility barriers are or will be cured." Doc. 13 ¶¶ 6, 35. U.S. Wings states that Quezada lacks standing "because his allegations do not plausibly establish that he intended to return to the website at a point in time when it allegedly was not compliant with the ADA." Doc. 17 at 18. This argument fails because the Moody Declaration alleges that non-compliance continued after the filing of the Amended Complaint in March 2021. Moody Decl. ¶ 7.

"An intent to return [to the public accommodation] is a 'highly fact-sensitive inquiry.'" *Guglielmo*, 2020 WL 7480619, at *3 (quoting *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015)) (citing *Kreisler*, 731 F.3d at 187–88 and *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)). A mere assertion of an intent to return to the place of injury some day when alleged barriers have been rectified has been found to be insufficient to establish standing in the context of ADA claims for accessible gift cards. *See, e.g.*, *Matzura v. Red Lobster Hosp. LLC*, No. 19 Civ. 9929 (MKV), 2020 WL 3640075, at *3 (S.D.N.Y. July 6, 2020) (holding that plaintiff failed to establish standing because the complaint made "the entirely conclusory assertion" that the plaintiff intended to immediately purchase a gift card as soon as the defendant sold accessible gift cards) (internal quotation marks and citations omitted). However, in the context of website

6

access, a line of ADA cases that is only recently being developed, the standard to establish standing is slightly less burdensome. The plaintiff need only establish "a reasonable inference that he intended to return to the [w]ebsite." *Camacho v. Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019).

In *Camacho v. Vanderbilt Univ.*, a legally blind plaintiff was unable to properly utilize the defendant's website and resources when researching colleges. *Id.* at *10. The court found that there was a valid intent to return because the plaintiff "(i) tried to visit the [w]ebsite on multiple occasions; (ii) has a stated motivation for returning to visit the [w]ebsite in the future; and (iii) may easily return to the [w]ebsite should it be made accessible." *Id.* By contrast, in *Guglielmo*, the plaintiff failed to show the requisite intent. 2020 WL 7480619, at *5. In that case, the plaintiff visited the defendant's online furniture retailing website and had difficulty browsing through it. *Id.* at *2. The plaintiff only alleged that he was deterred from accessing the website "on a regular basis." *Id.* at *5. However, according to the defendant, the plaintiff would not have the ability to place a delivery order to New York, his place of residence, even if the site were accessible to him. *Id*. The Court found that this, coupled with the "vague and conclusory allegations of intent to return," established a low likelihood that the plaintiff would go back to the website. *Id.*

The Court finds that Quezada has sufficiently shown an intent to return to the website. First, Quezada does specifically state his intent to return to the website if accessibility issues were remediated. Doc. 13 ¶ 35. Second, there is no information suggesting that U.S. Wings does not deliver to individuals in Quezada's jurisdiction as in *Guglielmo*. As stated in the Amended Complaint, the products offered by U.S Wings are available for purchase and delivery nationwide. *Id.* ¶ 24. As websites are already easily accessible at any moment, Quezada's claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing.

Last, for standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceably to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Bronx Indep. Living Servs. v. Metro. Transp. Auth.*, No. 16 Civ. 5023 (ER), 2021 WL 1177740, at *10 (S.D.N.Y. Mar. 29, 2021) (quoting *Liu v. U.S. Congress*, 834 F. App'x 600, 602 (2d Cir. 2020)) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). U.S. Wings argues that there is no injury-in-fact because Quezada fails to specify which aspects of the website restricted him from purchasing items. Doc. 17 at 21. U.S. Wings also argues that Quezada did not allege that any of the found accessibility barriers caused "concrete and particularized injury." *Id.*

The Court finds that Quezada has sufficiently alleged an injury-in-fact. The Second Circuit views the injury-in-fact standard as a "low threshold." *Bronx*, No. 16 Civ. 5023 (ER), 2021 WL 1177740, at *10 (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)). Moreover, though injuries must be concrete and "actually exist," they do not require tangibility. *Id.* (quoting *Spokeo*, 578 U.S. at 340). The court in *Camacho v. Vanderbilt Univ.* found that the plaintiff's inability to access and the general deterrence to use the defendant's website was a sufficient ADA injury. 2019 WL 6528974, at *9. In addition, the Second Circuit has determined that deterrence on its own constitutes an injury under the ADA. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d at 184, 188 (2d Cir. 2013)). Quezada has alleged that he was unable to determine information about defendant's products such as which sizes were available, was not able to purchase items, and is deterred from visiting the website in the present and future. Doc. 13 ¶¶ 37–38. Quezada's incapacity to properly use the website and subsequent deterrence to access the site constitutes an injury-in-fact as it is a direct result of the U.S. Wings' actions.

Therefore, because Quezada has standing under the ADA, this Court has subject-matter jurisdiction.

### III. MOTION TO DISMISS FOR LACK OF SUPPLEMENTAL JURISDICTION

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). Subsection (c) of § 1367 enumerates circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c) (3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari,* 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (citation omitted). The Supreme Court has noted that in the case in which all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . [I]f the federal law claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Court has supplemental jurisdiction over the state law claims because it has subject-matter jurisdiction over the ADA claims.

9

### IV. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
#### A. Legal Standard

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 2 Civ. 4695 (LTS), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction. *Id.* As the Court evaluates a Rule 12(b)(2) motion, it must construe all of the plaintiff's allegations as true and resolve all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (*citing Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As Rule 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials outside the pleadings when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

There are two types of personal jurisdiction, general and specific. General jurisdiction may only be asserted where the parties' contacts with the forum state are continuous and systematic and may apply irrespective of whether the claim arises from or relates to the defendant's forum contacts. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001)). Alternatively, specific personal jurisdiction is implicated when "the claim arises out of, or relates to, the defendant's contacts with the forum" such that it can be said that it "'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the court must first determine whether personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute, Civil Practice Law and Rules ("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a). If the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

### B. Analysis

#### 1. General Jurisdiction

U.S. Wings argues that this Court lacks general jurisdiction as U.S. Wings is not "at home" in New York. Doc. 17 at 25. The court in *Brown v. Web.com Grp., Inc.* stated that "the classic, but not exclusive bases of general jurisdiction [for a corporation] are a corporation's place of incorporation and principal place of business." 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Additional indicia of a corporation's presence in the forum include whether it has employees, agents, offices, banks account, or property within the state; whether it is authorized to do business there; the volume of business it conducts with state residents; whether it has a phone listing in the state; whether it does public relations work there; and whether it pays state income or property taxes." *Id.* (citing *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003); *Bossey ex rel. Bossey v. Camelback Ski Corp.*, 21 Misc. 3d 1116(A), No. 36142-07, 2008 N.Y. Slip Op. 52080(U), at *3, 2008 WL 4615680 (N.Y. Sup. Ct. 2008)).

The Court does not have general jurisdiction over U.S. Wings because the company: (1) is incorporated and headquartered in Ohio, (2) does not have a "physical presence or operations" in New York, (3) "does not advertise in New York", and (4) "does not solicit customers in New York." Kruty Decl. ¶¶ 3, 5–7. Last, the Court finds that Quezada's interaction with the website in New York is not enough to obtain general jurisdiction. *Holmes v. Apple Inc.*, No. 17 Civ. 4557 (ER), 2018 WL 3542856 (S.D.N.Y. July, 23, 2018), *aff'd*, 797 F. App'x 557 (2d Cir. 2019) (ruling that the plaintiff's ability to open and use the defendant's website in New York is insufficient, on its own, to establish general personal jurisdiction).

#### 2. Specific Jurisdiction

In addition, U.S. Wings argues that this Court does not have specific personal jurisdiction. Doc. 17 at 24. The New York personal jurisdiction long-arm statute allows a

court to exercise personal jurisdiction over "any non-domiciliary, . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1). Therefore, a court has to determine "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Camacho v. Emerson Coll.*, No. 18 Civ. 10600 (ER), 2019 WL 5190694, at *3 (S.D.N.Y. Oct. 15, 2019) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Deutsche Bank Sec., Inc. v. Mont. Bd. Of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)).

In assessing whether a website can be defined as the defendant's transaction of business in New York, courts analyze the website's "degree of interactivity." *Id.*; s*ee also Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, No. 16 Civ. 3136 (DAB), 2017 WL 4082481, at *8 (S.D.N.Y. Aug. 31, 2017); *Best Van Lines, Inc.*, 490 F.3d at 252. A defendant's operation of a passive website accessible in New York, such as those for just posting information, does not amount to the required level of transacted business for personal jurisdiction. *Id.* (citing *Best Van Lines*, 490 F.3d at 252 and *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). On the other hand, a defendant's operation of interactive websites accessible in New York, such as those involving the purchase and exchange of goods, does amount to specific personal jurisdiction. *Id.* Several websites also find themselves in an intermediate category where they are neither completely passive nor interactive, but rather "permit[] the exchange of information between users in another state and the defendant." *Id.* (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000); *Zippo*, 952 F. Supp. at 1124)).

U.S. Wings' website is interactive, as it allows for the purchase and exchange of goods, including to New York, and therefore confers personal jurisdiction. While a website's capacity to be accessed in New York cannot alone establish personal jurisdiction in the absence of any specific targeting of New York by the defendant, *see*

*Guglielmo*, 2020 WL 7480619, at *8, personal jurisdiction exists where the plaintiff establishes "a reasonable probability that [the Website has] been actually used to effect commercial transactions with customers in New York." *Id.* (quoting *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (internal citation and quotation marks omitted); *see also Queen Bee of Beverly Hills*, 616 F.3d at 171 (finding personal jurisdiction over a website that offered and engaged in sale of bags to New York consumers). Quezada has alleged that the website offers goods for sale to consumers in New York, Doc. 13 ¶ 22, and, importantly, U.S. Wings has not denied this. Quezada has thus established *prima facie* evidence that U.S. Wings conducts business in New York. U.S. Wing's declaration that they do not "solicit customers" or advertise in New York, Kruty Decl. ¶¶ 5–7, is not enough to immunize them from this state's jurisdiction when their products are readily available for sale to New York customers. U.S. Wings' likely sale of goods in New York through an interactive website constitutes "purposeful availment of the benefits of transacting business in New York." *Queen Bee of Beverly Hills*, 616 F.3d at 171; *see also Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Personal jurisdiction has been found when out-of-state defendants allegedly have sold copyright-infringing merchandise over the Internet to customers in New York.") (collecting cases).

As for the second prong of the personal jurisdiction inquiry, this cause of action arises from such a business transaction since Quezada alleges he attempted to access U.S. Wing's website to make a purchase. Doc. 13 ¶ 4. Therefore, U.S. Wings is within the reach of New York's long-arm statute.

3. *Due Process*

Due process requires that a defendant have "sufficient minimum contacts with the forum" to justify a court's exercise of personal jurisdiction, such that the "the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and

substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal quotation marks and citations omitted). The due process inquiry has two parts: (1) "the court must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and (2) "the court must determine whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Schottenstein v. Schottenstein*, No. 4 Civ. 5851 (SAS), 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Metro. Life*, 84 F.3d at 567). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong . . . showing by the plaintiff on 'minimum contacts' reduces . . . the weight given to 'reasonableness.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (citing *Metro. Life*, 84 F.3d at 568–69).

"The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) (citations omitted). Since the Court holds that U.S Wing's contacts with New York through their website are purposeful and related to the cause of action so that U.S. Wings has sufficient minimum contacts under C.P.L.R. § 302(a)(1), the Court also finds that these contacts meet the due process requirements. *See id.*

The reasonableness inquiry depends on five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state

in furthering substantive social policies." *Id.* (citing *Schottenstein*, 2004 WL 2534155, at *8). The Court does not find that the exercise of personal jurisdiction over U.S. Wings is unreasonable. Although litigating in New York may impose a burden on U.S. Wings, the burden is outweighed by the other factors. Because U.S. Wings' products are available to be sold, and likely are sold in New York, the forum has an interest in the resolution of the dispute.

The exercise of personal jurisdiction over U.S. Wings therefore comports with notions of fair play and substantial justice. U.S. Wing's motion to dismiss for lack of personal jurisdiction is denied.

V.     **CONCLUSION**

For the foregoing reasons, U.S. Wings' motion to dismiss is DENIED. The parties are directed to attend a telephonic initial pretrial conference on January 13, 2022, at 9:30 AM. The parties are to dial (877) 411-9748 and enter access code 3029857# when prompted. The Clerk of Court is respectfully directed to terminate the motion, Doc. 14.

It is SO ORDERED.

Dated:   December 7, 2021
         New York, New York

                                                          Edgardo Ramos, U.S.D.J.